This case started in July 26, 2010, when the Oregon Court issued a warrant for the search of my client's residence. It listed eight items. The first two were my client's laptop, and the second one was digital devices that turned out to be two thumb drives. The search warrant allowed and permitted the search of the laptop and the thumb drives for everything without limitation. It did not say, it said you can search, you can seize, you can test, you can analyze the laptop and the thumb drives. It did not say for what. It did not say for what purpose. It did not have any limitations whatsoever. It simply said you can seize it, you can search it, you can analyze it, you can test it. And it did not, a lot of warrants say at the end it can be done for the purpose of this criminal activity. This one did not do that. It is the ultimate in a general warrant that allows the search of everything on the computer, everything in the house. The list of eight items is, as I said, not followed by any limitation. Now, it is possible to say that the next six items are limitations on the first two, but one of the principles that this Court has articulated is that the warrant should not allow discretion to the officer. The discretion is in the, is the magistrate's, the determination is the magistrate's. There should be no discretion left to the officer. In this warrant that lists the Mac laptop and the digital devices and then six other items, the very thought that the six other items limit the first two is purely in the mind of the officer. It is discretion. Counsel, we have case law in our circuit that says that the affidavit itself can, in a sense, direct the agent performing the search to narrow the search. Can you talk about why those cases don't save the warrant here? Because the warrant is not incorporated. But the agent who swore the affidavit was the one who performed the search, correct? No. Well, actually, let me give the details. Sure. So, first of all, the warrant does not incorporate or refer to the affidavit. Yes, the affiant, Detective Snyder, was present during the search, but I'm suggesting that there are two constitutional infringements. One is a seizure of the laptop, and the other is the search. So, you're agreeing the seizure was okay because of the affidavit, but just the search is the problem? Since the... I mean, I think my colleague was definitely on point. Yeah, the affidavit wasn't incorporated in the warrant. It was not attached, but the guy who applied to the warrant, or the affidavit, went out there with the warrant. He was there when it happened. So, it seems to me, based on what my good colleague has suggested, that we get in and we can look at everything in the house. We can look at the finite list of items that are on the warrant, but whether we can search is your question. Am I correct? Am I correct? Just answer my question. I don't believe so, Your Honor. Okay. And the reason why is because this warrant, yes, it did identify the laptop. And the electronic devices. And the electronic devices. But even though it did that, it did not say for what purpose. Well, I understand it didn't say, but we had the affidavit and the person who had applied there. And if I look at Luke, it says, although the warrant lacks peculiarity, the affidavit was not included in the warrant, which we are right here. The agents may not have had it at the time of the search. The search was valid because the agent who did the affidavit was there at the time of the search and seizure, therefore, nothing was taken that should not have been. Yes, Luke. And I can see if Luke does hit the nail on the head, that Luke is the only case, all the other cases we have in the circuit, the warrant that was not referred to, incorporated, or attached. In those cases, suppression was ordered. Luke is the only case in which the warrant was not incorporated. It was not attached, but the actual agent was there and directed the search. And yes, following Luke, this, I was incorrect. This would fall under Luke. So it seems like we get in the house, we get the laptops, we get the thumb drive, and now we're just at, where do we search? Yes, so following Luke, the seizure is justified under Luke. But once you get to the lab, it is Stuart, not Snyder, Stuart who does the entire search of everything. And at that point in time, there is simply no whatsoever limitation on searching everything, everything in the house, everything in the computer, every file, along with just items number one and two. If we look at... What about good faith? That's going to be your big problem in my book. So please talk to me about good faith. You got me as far as you got me. And I want my colleague to feel satisfied. I didn't mean to interrupt him. But in my book, they took this warrant, they took this affidavit to a state prosecutor. He looked at it and said, oh, this is fine. They took it to the magistrate. Magistrate said, probable cause, no problem. Now you're going to say that these police, these people who had all this with the prosecutor, with the magistrate saying, go ahead, do what you got to do, we're not in good faith? And... Is that what you're arguing? Yes. Why? First of all, there are cases, as you're aware, that do say that even when a magistrate or a prosecutor has examined them, if the warrant is so facially, facially invalid, that the police officer cannot rely... Well, I looked at Luke again. I read Luke. Even where warrant lacked peculiarity, agents relied on approval of prosecutor, and a fiance supervised the search, so nothing could be seized beyond that in the warrant and described in the warrant, warrants a good faith exception. That's Luke. Yes. Seems to be right on with this case. But there are other cases, and I'm sorry, I would have to take a couple minutes to find them. They slipped my memory right now, that do say that when the warrant is so facially invalid, that a well-trained officer could not, even if approved by a magistrate and even if approved by a prosecutor, a well-trained officer could not reasonably, objectively rely, and if I can explain why in this case, no officer could. Because, let me refer to the fourth item. The fourth item says that you are allowed to test and search for information describing the content or usage of electronic media, including, without limitation, internet history. That is not a category. That is a direction, everything on the computer. Everything. Information describing the contents is a direction that you can search everything in this house, everything on that computer, and it does not say for the purpose of a crime. It does not list a crime. It does not say any criminal code. It simply says everything on the computer. A police officer who is going to conduct this search is going to come across that phrase and is going to say to him or herself, I'm going to search this thing and everything in it, but I have no idea, there's no direction of what I'm searching for. That is not what an officer normally does. There's always some criminal activity described. There's always some criminal code. There's always something phrased in terms of a crime to limit that search. That officer who looks at this and is going to conduct that search has no guidance whatsoever, no objective standards how to limit that. All eight of these items, since they're not tied to any criminal activity, any item that is not tied to a criminal activity must by necessity involve the discretion of the officer in limiting the field from non-criminal to criminal, and there's no standards in here. So getting back to the good faith, an officer who looks at a warrant that has no crime listed, no criminal activity, he can't say, I know what I'm searching for. That's exactly what Luke said. I mean, that's why I read Luke to you twice. Well, Luke got you through the search, or excuse me, the going to the house and seizing. Luke then gets you to the search, and Luke says, well, you may not have had a very, good search, but there was an approval by a prosecutor. The affiant supervised the search, so nothing was seized beyond that the warrant had described, and if you go see the prosecutor and the affiant is there supervising, then you can do all the searching you need based on the 1985 case says, which was interesting to me, it would be plainly unreasonable for officers to take issue with the considered judgment of a prosecutor and the judge issuing the warrant. So what's your best case for what you're arguing? In Arnsberg was a civil case over I understand, but I just read what it said. What's your best case? Ganius went out the window since the second circuit took it back. So what's your best case? And I have to apologize. It's in the briefs. I don't have it at my fingertips, but there are cases that I guess I looked at them and I found nothing that really hit me. So that's why I was anxious that you tell me. I looked at your best one because I can't find one that's going to go around Luke. And I'll have to apologize and say again, there are two or three cases in this district that clearly say. Isn't it the Oregon district? You meant the circuit? The ninth circuit. Yes, I'm sorry, my fault. The ninth circuit that clearly say that if the warrant is so facially invalid, it does not matter if the district approved it. I think Leon says that. Yes, Leon says that. Leon, of course, says that. In Luke, however, that's a difference between looking for documents, say financial documents, and looking for a computer, searching a computer. In Luke, we're simply dealing with the financial documents. Actually, Luke is a little bit difficult to decipher because they start with a presumption that it's a warrant that lacks particularity and it was cured by the detective being present. But when you're looking for documents, the actual search and seizure occurs there in the home or the business. When you're looking at a computer, just because you see it's a laptop, that's an when you get into the lab and you decide what you're going to look for. That is where it's important to limit the search, not to simply identify the fact that there's a computer there. Having the affiant present during the actual search of the computer is what's important. It would be like saying a warrant that says, search a house, and you describe the house, the windows, the doors, the color, and the affiant is there to say that's the house. Now, you get to search everything in it. I'm not going to go away. It's the same thing. Searching the computer is completely different from the search of documents. I think I'm getting into the other 10 issues. When the computer was for the search, what would the officers do with their money? The lab? There's no sufficient evidence that the lab limited or knew what they were searching for. There's evidence that Detective Stewart had a discussion with Detective Snyder about the results of his preliminary search. We know what the final results are because we have the reports and the case notes from Detective Stewart where they examine it. But what he actually searched for, we don't know. And that's the problem of using the results and looking backwards. Because if you say that a warrant allows for a complete search of everything in the house, a complete search of everything in the computer, but you're only concerned about the results, that is, you found child porn or you found drugs, and because you found those results, that nullifies the fact that you did a general search but the only thing you found was the drugs or the child porn. You don't know what the actual search was. In this particular case, in his testimony in the Oregon trial, Detective Stewart said, I did a preliminary examination. Later, I did a more thorough examination. He found PowerPoints. He found internet activity. He did a directory of every single file. So we don't know how extensive. We do know that the warrant allowed him to look at everything. And if, again, once again, if you look at simply the results, if you only look at the results, you eliminate the specificity clause of the Constitution. And again, I didn't get into my other 10 issues. I don't know if we have time for that. We probably don't. May it please the Court, I'm Jane Shoemaker on behalf of the United States. Before I begin my argument, I do want to correct one statement that is in the government's brief, which is on page 25. We stated that we had originally requested to put in 97 slides in our case in chief that contained, some of which contained child pornography and some of did not. In fact, we had requested to put in more than 97 slides total. There were 97 of those slides that contained some images of child pornography. The Court should affirm the denial of the defendant's motions to suppress because each of the warrants in this case were sufficiently particular and supported by probable cause and the agents acted in good faith in seeking and executing each of the warrants. While there's no question that the state warrant was not a model, it was not so flawed that it was fatal either on its face or as applied to the good faith doctrine. The state search warrant was sufficiently particular to notify the affiant what he was authorized to do. What happened in this case, Your Honor, was that the child abuse detective Snyder had received information on a Sunday afternoon that the defendant possessed images of child pornography on certain files on his laptop computer and on a thumb drive at his residence. He was also... His girlfriend found out about those images and recorded the information. That's correct, Your Honor. She also told the police that the defendant had a minor child who was living with him and that he was a middle school teacher. The affiant indicated that he was concerned for the welfare of the child and he was also concerned for the possible destruction of evidence if they conducted a welfare check on the child or removed him from the home. It would alert the defendant to the investigation and he could destroy the evidence. He also indicated that he had some concern that since the two roommates, the girlfriend and Michael Nielsen, who lived in the basement, were aware of the evidence on the laptop and the thumb drive and of the investigation, that there was a potential for disclosure of that fact to the defendant who could result in destruction of evidence. So he believed he needed to act quickly and get that warrant approved as quickly as possible. So he tried to corroborate the information from Amy Anderton that same day and put together a search warrant affidavit before going to the magistrate. He did submit it to a local prosecutor to approve it and the local prosecutor reviewed it and did approve it. He then submitted it to a circuit court judge in Multnomah County. It was after midnight and received telephonic approval for the warrant. In fact, it was circuit judge Kelly Skye, I believe, and the circuit judge not only it is in the record and I don't recall, but I believe the prosecutor's name was Lowe. This is not the U.S. Attorney's Office? This is a local? No, it was with the Multnomah County District Attorney's Office. I believe it was Multnomah County. It was a local prosecutor. So Judge Skye. It was just done on the weekend. It was, Your Honor. I believe it was a... There were not too many people around. What kind of inquiry? They did want to get it signed as quickly as they could for the reasons stated. So he, I don't know why he went to Prosecutor Lowe in particular, but he did get approval. He then went to the District Attorney's Office, which is where he received the telephonic approval. And the judge also authorized the execution of the warrant in the middle of the night. Telephonic approval? Yes, Your Honor. But it wasn't just a telephonic warrant where you provide the probable cause over the phone and then later submit the affidavit. He actually... Did the magistrate judge have a copy of the phone's material before it? Yes, Your Honor. So he had a hard copy that he looked at? Yes, Your Honor. It had been... Was it kind of a sense of urgency? Yes, Your Honor. I believe it had been submitted by email and the judge authorized the warrant shortly after midnight and authorized execution of service of the warrant that same night. So the judge in the middle of the night? Yes, Your Honor. So the judge authorized... The real problem comes, doesn't it, that if you only look at the warrant, it really doesn't say what's in the affidavit? It doesn't have the full details of the affidavit. No, it does not. And we... And that's the problem. When the warrant does not have an affidavit attached, the court cannot rely on the affidavit to cure the generality of the warrant, and therefore we have to find other ways to do it correct. I agree that it would have been preferable to incorporate the affidavit, and because it wasn't incorporated, that the court cannot rely on the affidavit itself. And as your colleague suggests, it's a general warrant. And with a general warrant, if we don't have an affidavit supporting it, we're in kind of tough shape, right? I agree that it's not a model affidavit, or excuse me... I don't even agree that it's a model warrant. I don't agree that it's a model affidavit. I don't think they're anywhere close. And my big worry is, is there an exception that we can get there? There is an exception, Your Honor. What's the exception? Well, that would be the good faith exception under Luke. And just... I don't want to be that the warrant was so general that the... Well, everybody's in a big hurry. They're waking the judge up in the middle of the night. Not too happy about that. And they email stuff to him, and nobody's very careful. And so, I would just say, well, they were doing their job, you know, kind of screwed up. So, but they did it in good faith. So, always forget good money. I have multiple positions regarding that, Your Honor. First of all... I know that there were times many, many years ago, when I first got on the bench, that I'd get calls in the middle of the night, whether I'm here or there. I had my phone number, you know. But none of them was, you know, very conscientious then. So, they'd come, and I'd sit there and read it, and all that. But it's all that pressure that comes up. I'm sure if there had been more time, that it would have been a better warrant than it turned out to be. However, I believe looking at the warrant as a whole, it's sufficiently particular to prevent general rummaging. But in any event, as the court has indicated, and as similar to the Luke case, the affiant was the person who was overseeing the search. In fact, really, it was just him and another case agent who searched the defendant's room, and they didn't seize anything that was outside the scope of the affidavit. So, therefore, I do believe that the court should at least uphold it under the good faith exception. In addition, there's an independent basis for upholding the seizure of the evidence and the admission of that evidence, ultimately, at trial, and that is under the federal warrants that were authorized in this case. The federal warrants were more detailed. They are very detailed about what was authorized to be seized. They were supported by probable cause, and they were also executed in good faith. So, this court could also uphold the denial of the motion to suppress based on the independent federal warrants in this case. Let me ask you a question, which is of some worry to me, on the state warrants. You actually get down to good faith as your last argument, and yet the district court did not rule on good faith, did it? No, the court did not. So, am I allowed to rule on appeal on good faith when the district court doesn't even say anything about it? I believe this court can. What's your best precedent for that? We fully briefed and argued that issue below, so there is support in the record, and we have argued it on this appeal as well and cited cases where this court, from the undisputed facts, could find good faith on this record, pursuant to the Luke case in particular. And really, almost every single case in this circuit and elsewhere where an affiant relies on the approval of a prosecuting attorney, almost every time, even if the warrant is defective, whether it's based on probable cause or being overbought, almost every single case, the good faith exception can save the I didn't find any case where the district court had not ruled, and then it hit me, and I was supposed to rule. I saw argument. I saw briefing. I saw everything down there, but the district court could never get there. So, how do I get there? I can't think of a case off the top of my head where this I couldn't find one, so I'm glad you're not just right on top of it. I had better than you. I wasn't put on the spot at the time. I was searching, but I was just seeing if you had the case. I don't, Your Honor, but I do believe that since the record was fully developed below and it's undisputed facts, that I think this court could find that. But alternatively, I think the court can also uphold the denial of the motion to suppress based on the federal warrants in this case, which covered all the evidence that was admitted at trial. I take it your position would be that since the district court upheld the warrants in this case, if we were to send it back to remand on good faith, I think we kind of know what the answer would be. Yes, I don't think there's any evidence in the record to show any bad faith by any of the agents in this case, the state agents, the federal agents. I don't think there's any evidence of bad faith at all. And after all, all they did seize were the digital devices that were explicitly described in the state warrant. They were also described in the federal warrants. All they did wind up seizing was it was all relevant evidence and responsive to what was described in the warrants. Unless the court has any questions for me about any of the other issues, I will submit it to her briefly. Thank you. I think you used your expired time, but Honorable Patterson might give you some more. He's a good guy. Thank you. I sometimes need the help. I appreciate that. But let me get very quickly to the good faith issue. I do cite on page 12 of my reply brief, United States versus Cal out of this circuit, in which, quoting from my brief, I assume I'm accurate, even when a facially invalid warrant is reviewed by the prosecuting attorney before submission to the magistrate, it is invalid. And that's the Cal ad 428, 429. I don't believe it's the only case in this district that holds that. So I think that it depends on the circumstances, just how broad the warrant is, whether or not that rule applies one way or the other. It is, however, on the good faith issue, it is the prosecution's burden of proof. The court did not, I was not the trial attorney, the court did not get to it in this particular case, because the court ruled that the organ warrant was okay, and since it was okay, they didn't need to get to the good faith. Very quickly on the, what I call the gaineous principle, that is simply recognizing that there needs to be a balance. When the police seize massive amounts of commingled, nonresponsive, private documents, because they need the practicality to search it at the lab, they've got this massive amount of private stuff. The balance is they're allowed to do that for the prosecution, but they've got to return it within a reasonable time, otherwise it is an egregious deprivation of one's property rights. It's nonresponsive, they have no right to keep it. That's the gaineous principle, it's simply, I believe, an extension of our Demurra case. Getting to the federal warrants, two things, this is an issue that's not been before the 9th Circuit, I haven't done any other case like it. You have a second search based on the exact same, if you, if the organ warrant is illegal, and you have to redact that search information, then the federal warrant is limited to the exact same information, not a single word more, the exact same facts as the organ case. So you've got a second search of the same material without a single new fact, and that would be like if you were to search a house on January the 1st of 2014, and then a year later say, I haven't got a new fact, I don't have new facts, but I'd like to search the same house for the same information. There's no, once you have a search done once, and found what you, what the search uncovers, there is no probable cause without new facts to search it again. The federal warrants fail, one, because they are based on illegally seized evidence from the organ courts, and because there's no probable cause for a second search. Thank you. Thank you. Well, this ladder is also spinning.
judges: Pregerson, Smith, Owens